AREKNAZ PAMPEGIAN, executrix, *vs.* GEORGE RICHMOND
& others.

Suffolk.　November 5, 1945. — February 28, 1946.

Present: FIELD, C.J., DOLAN, RONAN, & SPALDING, JJ.

*Agency*, Scope of authority or employment. *Payment.*

Evidence merely that the payee of a promissory note "through his agent"
delivered it, unindorsed, to an attorney at law "for the purpose of
collecting the same"; that the attorney dealt only with the agent
respecting his activities in seeking and effecting collection and made
reports only to the agent; and that the payee at no time communi-
cated with the attorney, warranted but did not require a finding that
the agent had authority on behalf of the payee to receive payment
from the attorney of sums collected.

CONTRACT.　Writ in the Superior Court dated October
16, 1944.

The case was tried before *Burns*, J.

*F. G. Lichtenstein*, for the plaintiff, submitted a brief.

*H. C. Thompson*, for the defendants.

SPALDING, J.　This action of contract is brought by the
plaintiff as executrix of the estate of Garabed Aselbegian.
In her declaration she alleges, in substance, that the defend-
ants, as attorneys for Aselbegian, collected $667.80 for him
for which they have never accounted.　The plaintiff seeks
to recover this sum with interest at thirty per cent from the
date of demand under G. L. (Ter. Ed.) c. 221, § 51.　The de-
fendants pleaded a general denial, payment and the stat-
ute of limitations.　The case was tried to a jury.　At the
close of the evidence the judge ordered a verdict for the
defendants subject to the plaintiff's exception.　At the same
time, also subject to the plaintiff's exception, the judge
denied the plaintiff's motion for a directed verdict.　The
questions for decision are the correctness of these rulings.

The following is a summary of the relevant evidence:
The defendants are partners engaged in the practice of law

in Boston. In 1935 Aselbegian, through his agent Morlian, delivered a note to the defendants "for the purpose of collecting the same." The note (which was dated March 16, 1932, and was due in or within one year from date, with interest) was in the sum of $1,000, but at the time it was turned over for collection the balance due, according to the plaintiff's declaration, was $600 with interest; Aselbegian was the payee and the makers were two individuals and a corporation. It is agreed that the note was not indorsed. In January, 1936, the defendants brought an action in the name of Aselbegian against the corporate maker to recover the balance due on the note. Thereafter in February, 1936, the defendants effected a settlement of the case with the corporation by which the defendants received its note in the sum of $667.80 secured by a chattel mortgage. The note was "payable to the defendant Samuel Rosen, Trustee," and he was similarly described as mortgagee in the mortgage. Thereafter "judgment for neither party" was entered in the action at law. In October, 1936, the defendants foreclosed the mortgage and sold the mortgaged property to one Tufank, who was the highest bidder at the foreclosure sale, for $600. Of this sum $100 was paid in cash at the time of the sale, and Tufank's note for $500 (bearing interest at six per cent and secured by a chattel mortgage of the property sold) was received for the balance. Both the note and the mortgage ran to the defendant Rosen as trustee. The mortgage contained a provision that, upon payment of the note, "this Deed, as also the aforesaid note and all prior notes of Guzelian Bros. Inc. held by me or Garabed Aselbegian shall be void." In June of 1937 Rosen discharged the mortgage and surrendered the note to Tufank upon receiving from him the balance of $500 without interest. The defendants put in evidence two checks, one for $294.80 and one for $10, drawn by them and payable to Morlian. There was typed on each check the following: "Paid in full Re Aselbegian *v.* Guzelian Bros." The checks were deposited by Morlian in a bank in Los Angeles, California, and were paid through the Federal Reserve Bank in Boston. The balance of the $600 collected was retained by the de-

fendants as compensation for their services. The defendants never dealt directly with Aselbegian with respect to the foregoing matters; all negotiations were with Morlian. The defendants "reported the progress of the case from time to time to . . . Morlian." Morlian had come into the defendants' office frequently in connection with collections that he brought in on behalf of other persons, and "seemed to be spokesman for the Armenian people in Watertown."

In directing a verdict for the defendants the judge ruled that the defence of payment had been established as matter of law. This was error. Inasmuch as there was no contention that the payment was made to Aselbegian personally, the burden of proof was upon the defendants to show that Morlian, to whom the payment was made, was authorized to receive it. *Whitaker* v. *Ballard,* 178 Mass. 584. *Boice-Perrine Co.* v. *Kelley,* 243 Mass. 327, 329. *Springfield National Bank* v. *Jeffers,* 266 Mass. 248, 252–253. The evidence as to Morlian's authority is meager. All that the record discloses is that Aselbegian, "through his agent [Morlian], delivered the note to the defendants for the purpose of collecting the same" and that the defendants thereafter reported the progress of the case to Morlian from time to time. There is no evidence of prior dealings with Morlian concerning the affairs of Aselbegian. It cannot be said on this evidence that Morlian's authority to receive the payments was established as matter of law. Am. Law. Inst. Restatement: Agency, § 71. Mechem, Agency, § 935. *Springfield National Bank* v. *Jeffers,* 266 Mass. 248, 252–253.

A more difficult question is whether the evidence would permit a finding that he possessed such authority. If it would, then the plaintiff's exception to the judge's refusal to direct a verdict in her favor must be overruled. As to whether an agent has authority to receive payments on behalf of his principal, the rule is that, "unless otherwise agreed, authority to receive payment is inferred from authority to conduct a transaction if the receipt of payment is incidental to such a transaction, usually accompanies it, or is a reasonably necessary means for accomplishing it."

Am. Law Inst. Restatement: Agency, § 71. In comment a under that section it is stated that "an agent who has been given possession of securities or other evidences of debts payable to the principal is not thereby authorized to receive payment." See also Mechem, Agency, § 935; *Hunt v. Poole*, 139 Mass. 224; *Doubleday v. Kress*, 50 N. Y. 410. But in the case at bar we have more than the mere possession of an unindorsed note payable to the principal. There is the added circumstance that the agent had authority to turn the note over to the defendants for the purpose of collection plus the fact that Aselbegian never communicated at any time with the defendants and appeared to be content to entrust the details with respect to the collection of the note to Morlian. In *Kinsman v. Kershaw*, 119 Mass. 140, it was held that placing a bill (made out on the employer's bill-head) in the hands of an employee who had worked on the job for which the bill was rendered was sufficient evidence of the employee's authority to receive payment of it to require the submission of the case to the jury. Although the question is close, we cannot say that there was no evidence to warrant a finding that Morlian had the apparent authority to receive the payments in question. Am. Law Inst. Restatement: Agency, § 71. *Kinsman v. Kershaw*, 119 Mass. 140. See *Shed v. Brett*, 1 Pick. 401; *James v. Lewis*, 189 Mass. 134; *R. T. Adams Co. v. Israel*, 244 Mass. 139; *Springfield National Bank v. Jeffers*, 266 Mass. 248, 252, 253.

Since the judge erred in directing a verdict for the defendants the exceptions must be sustained.

*So ordered.*